RONALD M. OSTER (SB# 57954)  ronaldoster@paulhastings.com
DENNIS S. ELLIS (SB# 178196)  dennisellis@paulhastings.com
JOSHUA G. HAMILTON (SB# 199610)  joshuahamilton@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Plaintiff
NEW WORLD TMT LIMITED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW WORLD TMT LIMITED, a Cayman Islands corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>INTELLAMBDA SYSTEMS, INC., a Delaware corporation; WELLTIME INDUSTRIES, LTD., a British Virgin Islands Company, and JIANPING "TONY" QU, an individual,<br><br>                    Defendants. | CASE NO. C06-05564<br><br>**[PROPOSED] LETTER OF REQUEST REGARDING WELLTIME INDUSTRIES, LTD.** |

Case No.
LEGAL_US_W # 54689360.5

-1-

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

1.      This request is being made by the United States District Court, Northern District of California, the Honorable Susan Illston presiding.  The request relates to an action pending in the United States District Court, Northern District of California, entitled *New World TMT Limited v. Intellambda Systems, Inc., et al.*, Case No. C06-05564 (the "Action").

2.      This request is made to the Chief Secretary for Administration of Hong Kong SAR, Central Government Offices, Lower Albert Road, Hong Kong; Telephone: (011) (852) 2810-2954; Facsimile: (011) (852) 2877-0802 (the "Chief Secretary").

3.      The executed request should be copied to the attorneys representing Plaintiff New World TMT Limited ("New World") at the following addresses:

> Mohan Datwani, Esq.
> Robert San Pe, Esq.
> Paul, Hastings, Janofsky & Walker
> 22/F Bank of China Tower
> 1 Garden Road
> Hong Kong
> Telephone:  (852) 2867-9988
> Facsimile:   (852) 2147-3522
>
> – and –
>
> Dennis S. Ellis, Esq.
> Paul, Hastings, Janofsky & Walker LLP
> 515 South Flower Street
> Twenty-Fifth Floor
> Los Angeles, CA  90071-2228
> Telephone:  (011) (213) 683-6000
> Facsimile:   (011) (213) 627-0705

1    4.    In conformity with Article 3 of the Hague Convention on the

2    Taking of Evidence Abroad in Civil or Commercial Matters of March 18, 1970 (the

3    "Hague Evidence Convention"), the requesting judicial authority is the United

4    States District Court, Northern District of California, the Honorable Susan Illston

5    presiding, 450 Golden Gate Ave., Department 10, San Francisco, California 94102,

6    United States of America (the "Requesting Authority").  The request for execution

7    is made to the Chief Secretary.

8    5.    For the purposes of justice and the proceedings in the Action,

9    and for use at the trial of the Action, the United States District Court, Northern

10   District of California, hereby requests the assistance of the Chief Secretary to cause

11   testimony to be obtained from, and documents to be produced by, a responsible

12   person or officer having custody of the said documents (the "Witness") of DBS

13   Bank (Hong Kong) Limited ("DBS"), formerly known as Dao Heng Bank Limited

14   ("Dao Heng"), whose registered office is situated at 11/F The Center, No. 99

15   Queen's Road Central, Hong Kong.

16   6.    The plaintiff in this Action is New World, a company organized

17   under the laws of the Cayman Islands with its principal place of business in Hong

18   Kong, China.

19   7.    The defendants in this Action are Intellambda Systems, Inc.

20   ("Intellambda"), Welltime Industries, Ltd. ("Welltime"), and Jianping "Tony" Qu

21   (collectively referred to as the "Defendants").

22   8.    Intellambda is a Delaware company with its principal place of

23   business in Fremont, California, United States.

24

25

26

27

28

1        9.    Intellambda can be contacted through its counsel at the

2   following address:

3                  Steven Guggenheim, Esq.

4                  Wilson Sonsini Goodrich & Rosati

5                  650 Page Mill Road
                   Palo Alto, CA 94304

6                  Phone: 650-493-9300

7                  Fax: 650-493-6811

8        10.    Welltime is a British Virgin Islands Company.  Welltime has not

9   appeared in this action.  New World contends that Welltime is a sham corporation

10  with no legitimate business operations.

11       11.    Tony Qu is an individual who resides in San Jose, California,

12  United States.  At all relevant times, Tony Qu served as the Chief Executive Officer

13  and President of Intellambda.  New World served Tony Qu on October 31, 2006,

14  but he has yet to appear in the Action.  New World is informed and believes that he

15  is currently in Osaka, Japan based on a declaration submitted by Tony Qu in the

16  "Santa Clara Action."[1]  (Request for Judicial Notice in Support of New World TMT

17  Limited's *Ex Parte* Application for Issuance of Stipulated Letters of Request

18  ("RJN"), submitted concurrently herewith, Ex. 1).  New World is not aware of any

19  contact information for Tony Qu in Japan.

20       12.    New World contends that Welltime and Intellambda are both the

21  alter ego of Tony Qu.

22

23

24

25

26  _____

[1] The "Santa Clara Action" shall refer to the action filed by New World against Qu and nine other
27  companies run by Qu, including PrediWave Corporation ("PrediWave"), for, *inter alia*, breach of
    contract and fraud, which action is currently pending in the Santa Clara Superior Court, the
28  Honorable Jack Komar presiding (Case No. 104-CV-020369).

Case No.                -3-              [PROPOSED] LETTER OF REQUEST
LEGAL_US_W # 54689360.5               REGARDING WELLTIME INDUSTRIES,
LTD.

1  I.      **NATURE OF THE PROCEEDINGS**

2          13.     The Action arises out of a substantial purchase of Intellambda

3  stock by New World, a large Hong Kong conglomerate from Welltime.  As further

4  described below, New World alleges that, in order to induce New World to

5  purchase the Intellambda stock from Welltime at a substantial premium above what

6  Welltime allegedly paid, Tony Qu made certain material misrepresentations and

7  omissions regarding the nature of Welltime as an independent third party company,

8  when in fact it was the alter ego of Intellambda and Tony Qu.

9          14.     The allegations of New World in this case are set forth in detail

10  in New World's Complaint for Damages for:  (1) Fraud in Violation of the

11  Securities and Exchange Act of 1934(10b-5); (2) Fraud in Violation of Section

12  7303 of the Delaware Securities Act; (3) Common Law Fraud – Affirmative

13  Misrepresentations; (4) Common Law Fraud – Material Omissions; and (5)

14  Negligent Misrepresentation (the "Complaint").  A true and correct copy of New

15  World's Complaint is attached as Exhibit I to the Declaration of Joshua G.

16  Hamilton in Support of Plaintiff New World TMT Limited's Motion for Issuance of

17  Stipulated Letter of Request to Permit Discovery of Third-Party Witness in Hong

18  Kong ("Hamilton Decl.").

19          15.     The underlying facts, as alleged by New World in its Complaint,

20  are as follows:

21              (a)     Despite the representations and concealments by Tony

22  Qu, New World became aware in or around January, 2006 that Welltime is actually

23  a sham corporation.  At all relevant times, Welltime lacked any separate existence

24  from Intellambda or Tony Qu, and failed to follow proper formalities.  Moreover,

25  Tony Qu established Welltime in order to defraud potential shareholders of

26  Intellambda, and operated Welltime as his alter ego.

27

28

[PROPOSED] LETTER OF REQUEST
REGARDING WELLTIME INDUSTRIES,
LTD

(b)     Welltime is one of a number of sham corporations created by Tony Qu in order to defraud New World.  In fact, through discovery in a separate litigation, the Santa Clara Action, New World first became aware that in or around September, 2000, Tony Qu created Modern Office Technology Limited ("MOT"), a shell corporation and the alter ego of Tony Qu.  Tony Qu appointed his mother, Liu Xiu Qing, as the token President of MOT.   Tony Qu used MOT as an intermediary to loot money from another company of which he is the majority shareholder and Chief Executive Officer, PrediWave, at the expense of New World. For example, PrediWave and MOT entered into an agreement whereby PrediWave agreed to purchase 3,000,000 memory modules from MOT over a two year period. MOT thereafter entered into a series of purchase orders with, among other companies, Techno Linc Corporation ("Techno Linc") pursuant to each of which MOT agreed to purchase memory modules.   New World contends that MOT then re-sold the memory modules to PrediWave at incredible mark-ups, making millions of dollars from the sales; PrediWave paid the marked-up purchase prices to MOT, and represented to New World that the price of the memory modules it purchased was the fair market price; and PrediWave then sold the memory modules to New World at a marked-up price.

(c)     Tony Qu took affirmative steps to conceal the fact that MOT, Welltime, Intellambda, and Tony Qu were all controlled by and were the alter ego of Tony Qu.  However, demonstrating that MOT, Welltime, Intellambda and Tony Qu are all controlled by and the alter ego of Tony Qu, MOT transferred significant funds to Welltime from the MOT bank account at the Hongkong Shanghai Banking Corporation ("HSBC") in Hong Kong.

(d)     Intellambda and Tony Qu conspired with other people and entities to defraud New World in connection with the purchase of Intellambda stock.  Tony Qu contends that MOT is operated by friends of his brother, Jianli Qu. In addition, Tony Qu's mother, Liu Xiu Qing, is the President of MOT.  Wei Wang,

1   Tony Qu's former wife, is connected with MOT and Welltime. MOT, Welltime,

2   Jianli Qu, Liu Xiu Qing, Wei Wang and other yet to be identified parties took

3   affirmative acts to further the conspiracy to defraud New World in connection with

4   the purchase of New World stock.

5          (e)    Tony Qu was born in China and lived in Shanghai until he

6   was an adult. While in China, Tony Qu worked in the real estate business for a

7   company called Dazheng. In addition to real estate, Dazheng had numerous other

8   businesses, including a technology business. However, Tony Qu's background was

9   in marketing and real estate, and he has no formal technology training. In or around

10  1995, Tony Qu traveled to the United States for Dazheng in order to establish its

11  United States business. New World is informed and believes, and based thereon

12  alleges, that, soon after he arrived in the United States through the sponsorship of

13  Dazheng, he decided to abandon Dazheng to start his own company, V-Net

14  Microsystems, Inc.

15         (f)    Tony Qu formed Intellambda in 2003. Tony Qu

16  represented to New World that Khoi Hoang, an engineer who Tony Qu represented

17  was the inventor of PrediWave's technology and was granted two patents for

18  PrediWave's technology, had developed a revolutionary optical transport and

19  switching platform.

20         (g)    Between January 1, 2003 and May 28, 2003, in order to

21  induce New World to invest in Intellambda, Tony Qu, in his capacity as Chief

22  Executive Officer and President of Intellambda, made numerous material false

23  and/or misleading representations to Dr. Cheng Kar-Shun, Henry ("Cheng"), the

24  Managing Director of New World Development Company, Ltd., and Douglas Chan

25  ("Chan"), a former Managing Director of New World. Those misrepresentations

26  included, but are not limited to, (i) that Intellambda had completed optical router

27  products which would be brought to market within a year, that (ii) Intellambda had

28  entered into discussions with certain "top-tier" telecom companies and cable

[PROPOSED] LETTER OF REQUEST
REGARDING WELLTIME INDUSTRIES,
LTD.

multiple system operators to purchase and use Intellambda's products and technology. Those companies identified by Tony Qu include Comcast Corporation ("Comcast"), Verizon Communications, Inc. ("Verizon"), Time Warner Cable ("Time Warner"), MCI, Inc. ("MCI"), Qwest Communications International, Inc. ("Qwest"), SBC Communications, Inc. ("SBC"), AT&T Corp. ("AT&T"), and WilTel Communications Group, Inc. ("WilTel"), and (3) that Intellambda's revenues in 2004 would be at least $500,000,000.

(h)     In or around May 2003, but prior to May 28, 2003, Tony Qu stated to New World representatives, including, but not limited to, Cheng and Chan, that in order for New World to invest in Intellambda, it would have to acquire shares in Intellambda from a purported third party, Welltime. Tony Qu and other representatives of Defendants stated that Welltime previously acquired from Intellambda 15 million shares (a 30% interest in Intellambda) in January, 2003 for $15,000,000. Tony Qu and other representatives of Defendants further stated that Welltime was only willing to sell 10,000,000 of its shares (a 20% interest in Intellambda), at a total cost of $90,000,000. Tony Qu represented to New World through Cheng and Chan, that Welltime was a separate distinct entity from Intellambda, and a company which he was not involved in and had no control over.

(i)     In reliance on Tony Qu's representations, New World, as the transferee, entered into a May 28, 2003 Stock Transfer Agreement the ("STA") with Welltime, as transferor, and Intellambda. Pursuant to the STA, Welltime agreed to transfer to New World, and New World agreed to purchase from Welltime, 10,000,000 shares of Series A Preferred Shares in Intellambda, for the total purchase price of $97,000,000.

(j)     Under the terms of the STA, New World received the right to appoint a person to Intellambda's board of directors, provided that New World owned at least 5,000,000 Series A Preferred Shares of Intellambda.

**A.  New World Invests $97 Million in Intellambda.**

(k)  Pursuant to the Agreement, on June 10, 2003, New World placed $25,000,000 in escrow as partial payment for the shares pursuant to the STA.  The remaining $72,000,000 was due on January 30, 2004, subject to Intellambda providing additional information to New World and Cheng so that they could perform due diligence on Intellambda.

(l)  Prior to the closing of the transfer and purchase of the Series A Preferred Stock pursuant to the STA, on or about January 28, 2004, New World representatives attended further technical briefings on Intellambda's technology, during which Intellambda, through Tony Qu and others, repeated its promises described in paragraph 15(g), above.

(m)  Based on the representations of Tony Qu and others employees or representatives of Intellambda, on or about January 30, 2004, New World and Cheng paid the remaining $72,000,000, and the STA was consummated.

**B.  After the Initial Investment, Tony Qu Continues to Make False Representations About Intellambda.**

(n)  After the closing of the transfer and purchase of the Series A Preferred Stock in Intellambda pursuant to the STA, Defendants, through Tony Qu, made additional material representations to New World, through Cheng and Chan, regarding the status of the development of Intellambda's technology, Intellambda's finances, and Intellambda's business prospects, as described in paragraph 15(g), above.  Moreover, Tony Qu represented that Intellambda had meetings with Comcast, Verizon, Time Warner, MCI, Inc., Qwest, SBC, AT&T, and WilTel, and that representatives of each of those companies told him that they were impressed with Intellambda's technology, and interested in utilizing it for their companies.  Tony Qu also stated that a deal with each company would be worth hundreds of millions of dollars to Intellambda.

1       (o)     For the first time in or around late September, 2004, and

2   continuing into 2005, Defendants informed Plaintiff that Intellambda was

3   experiencing financial difficulties, and that Intellambda would require substantial

4   additional investments in order to seize the potential business opportunities with

5   "top-tier" companies in North America, including, but not limited to, Comcast,

6   Verizon, Time Warner, MCI, Qwest, SBC, AT&T, and WilTel.  Specifically, on

7   September 14, 2004, Tony Qu stated to Cheng that Intellambda was underfunded,

8   and would require an additional $300 million for research and development in order

9   to have a commercially ready product.  In December 2004, Cheng Yu-Tung, the

10  founder of the New World Group, of which New World was part, wrote to Tony Qu

11  that he was "very concerned about the project" and requested additional

12  information.  When Tony Qu failed to provide this information, in June 2005, New

13  World announced that it took a provision of HK$377 million (approximately

14  US$68,333,333.33) against the investment.  This was the first time New World had

15  reason to believe that Tony Qu's representations concerning Intellambda were false.

16      (p)     Prior to New World's investment in Intellambda, no

17  representative of Intellambda ever disclosed to New World or Cheng that

18  Intellambda was underfunded, or that Intellambda did not have sufficient resources

19  in order to complete and obtain certification necessary for commercial deployment

20  of any of its products, including its flagship product, the ILS640 DWDM Transport

21  and Switching System.

22      (q)     The foregoing representations were false, in that

23  Defendants never had legitimate business opportunities with the aforementioned

24  companies.  Moreover, Defendants intentionally omitted this critical information in

25  order to induce New World and Cheng to invest $97,000,000 in Intellambda.

26

27

28

1           (r)     In or about April, 2005, Plaintiff, through Cheng, asked

2  Defendants for evidence confirming their purported communications with the "top-

3  tier" companies with which Defendants previously represented that they had

4  discussions and meetings, including, but not limited to, Comcast, Verizon, Time

5  Warner, MCI, Qwest, SBC, AT&T, and WilTel. Plaintiff further requested that

6  Defendants provide a full set of Intellambda's financial statements, as Intellambda

7  was required to do pursuant to the STA. Defendants have not complied with

8  Plaintiff's requests.

9           (s)     Tony Qu's representation that Welltime paid $15,000,000

10  for shares in Intellambda omitted material information making said statement false

11  and misleading. Tony Qu failed to disclose that Welltime received the funds used

12  to purchase shares in Intellambda from MOT, a company created by Tony Qu in

13  order to steal money from New World. Therefore, New World essentially paid

14  twice for the same stock.

15           (t)     In addition, Tony Qu created a false market for

16  Intellambda shares by using Welltime as a conduit to sell the shares. Because

17  Welltime is the alter ego of Tony Qu and a co-conspirator of Tony Qu and

18  Intellambda, Tony Qu misrepresented to New World that the price of Intellambda

19  shares was marked up by at least $80,000,000. In reliance on this

20  misrepresentation, Plaintiff paid $97,000,000 for Intellambda stock where no real

21  market for the shares existed.

22           (u)     New World contends that the alleged improper and

23  unlawful nature of the memory module transactions is highlighted by facts and

24  documents uncovered by New World, including evidence that MOT was a mere

25  "dummy" or nominee company, or an alter ego, through which PrediWave, and/or

26  Tony Qu, or alternatively a co-conspirator with Tony Qu and PrediWave,

27  artificially inflated the prices it charged New World for the memory modules.

28

1   (v)   Due to acts by Tony Qu to cover up the fraud, Plaintiff

2   did not discover until around June 2005 that Tony Qu had used Intellambda in order

3   to perpetrate fraud upon Plaintiff.

4   **III.   EVENTS IN THE SANTA CLARA ACTION THAT ARE RELEVANT**

5   **TO NEW WORLD'S ALLEGATIONS IN THIS ACTION**
    **REGARDING THE NATURE OF MOT AND WELLTIME.**

6

7   16.   The following are the contentions of New World based on the

8   allegations and proceedings in the Santa Clara Action, as well as on certain events

9   and facts uncovered in the Santa Clara Action:

10   (a)   Despite evidence of a connection, PrediWave principals

11   denied any knowledge about the nature of MOT.  Specifically, in the Santa Clara

12   Action, Tony Qu, his former wife, his brother, and various other insiders of the

13   companies vehemently denied the foregoing allegations regarding the nature of

14   MOT.   For example, Wei Wang, Tony Qu's former wife and a purported

15   PrediWave board member, testified that her only knowledge about MOT was that it

16   was a company related to memory chips.  (Hamilton Decl., Ex. A at 91:1-19).

17   Ms. Wang denied having any knowledge as to whether she had ever been a

18   signatory on MOT's bank account.  (*Id.* at 91:20-96:6.)  She was absolutely certain

19   that she was not currently a signatory on the MOT account and that she had not

20   made withdrawals on the account.  (*Id.* at 94:7-10, 95:1-3, 96:1-3).

21   (b)   When questioned at his deposition, Tony Qu originally

22   answered "I don't know" in response to the question "Who runs [MOT]?"

23   (Hamilton Decl., Ex. B at 693:8-14.)  On March 3, 2006, Tony Qu then testified

24   that he "misunderstood" the question at his prior deposition, and that "Rob Lee and

25   James Lee" ran the company, although he still did not know who owned MOT.

26   (Hamilton Decl., Ex. C at 578:23-580:4).

27

28

[PROPOSED] LETTER OF REQUEST
REGARDING WELLTIME INDUSTRIES,
LTD

(c)     Tony Qu's brother, Jianli Qu testified at his deposition that MOT belongs to Li Gui and Li Ming, two schoolmates of his from Shanghai. (Hamilton Decl., Ex. D at 141:1-12.)[2]  Jianli Qu indicated that he put MOT in contact with PrediWave.  (*Id.* at 141:22-142:1.)

(d)     Wen Jun Shi, another purported PrediWave board member, testified that she knew "that they have a person named Robert Lee.  And also there's a person by the name of James Lee.  There's also another one called Liu Xiu Qing."  (Hamilton Decl., Ex. E at 55:19-25).  Liu Xiu Qing is Tony Qu's mother's name.  (Hamilton Decl., Ex. B at 564:16-17).  Wen Jun Shi testified that she has met both Tony Qu's mother and the Liu Xiu Qing, who works at MOT, and that they are not the same person.  (Hamilton Decl., Ex. F at 64:19-67:6.)

A.     **A LETTER OF REQUEST IS ISSUED IN THE SANTA CLARA ACTION.**

(e)     New World obtained the issuance of a letter of request in the Santa Clara Action in order to obtain MOT's bank records from HSBC to show that, in fact, there was a connection between MOT and Tony Qu.[3]  (RJN, Ex. 2).

(f)     Despite the efforts of PrediWave, on September 28, 2006, New World ultimately obtained bank documents regarding MOT's account at HSBC in Hong Kong.  (Hamilton Decl., ¶ 8).

(g)     The following events occurred after New World obtained the documents regarding MOT from HSBC:

(i)     **Tony Qu filed a declaration in the Santa Clara Action admitting that his testimony and numerous court filings included testimony and statements regarding the MOT that were "untrue."**  (RJN, Ex. 3(Ex. 1 thereto).  The declaration also indicated that Tony Qu was no longer in the

---

[2] Presumably, Li Gui and Li Ming are the same imaginary individuals as James Lee and Robert Lee.
[3] The letter of request issued by Judge Komar to HSBC for the production of documents regarding the bank accounts of MOT held at HSBC resulted in proceedings in the High Court of the Hong Kong Special Administrative Region Court of First Instance, Miscellaneous Proceedings No. 421 of 2006.

1    United States and was in Japan. (*Id.*)

2    (ii)    Shortly thereafter, counsel for Tony Qu submitted a

3    "Corrective Affirmation" in the Hong Kong letter of request proceedings

4    withdrawing assertions in previously filed affirmations regarding the purported

5    independence of MOT. (Hamilton Decl., Ex. F (Ex. AS-9 thereto). Tony Qu has

6    since then violated a court order in the Santa Clara Action requiring him to return to

7    the United States for a deposition (RJN, Ex. 1)[4] and transferred over $40 million

8    out of his account in the United States into an account in Japan. (Hamilton Decl.,

9    ¶¶ 2, 11 & Ex. H).

10   **III.    THE EVIDENCE TO BE OBTAINED**

11   17.    The evidence to be obtained is the requested documents from

12   DBS and the testimony from the Witness authenticating those documents, which

13   evidence is directly relevant to New World's fraud claims in the Complaint, and

14   necessary for use at trial.[5]

15   18.    The documents requested to be produced by DBS and

16   authenticated by the Witness are: (1) the following documents in the possession

17   custody or control of DBS relating to any account maintained by Welltime with

18   DBS for the period between August, 2002 and November, 2006, including, but not

19   limited to, account number 016-483-8380057210;[6] AND (2) the following

20   _____

[4] Tony Qu was served on October 31, 2006 with the Complaint and Summons in this action
21   pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure and Section 415.20 of the California
     Civil Procedure Code, permitting for substitute service on Tony Qu by leaving copies of said
22   documents at his place of business. Specifically, the Complaint and Summons were left with a
     responsible person at PrediWave, for which Tony Qu is the CEO and President. Notably, Latham &
23   Watkins, Tony Qu's counsel in the Santa Clara Action, recently explained to the court in that case
     that they maintain contact with Tony Qu through Vincent Lin at PrediWave. (Hamilton Decl., ¶ 13).
24   Mr. Lin is the Vice-President of Operations and corporate counsel of PrediWave and Intellambda.
     Mr. Lin has actual knowledge of this litigation, as evidenced by a September 19, 2006 letter from Mr.
25   Lin to New World's counsel addressing this action. (Hamilton Decl., Ex. J).
     [5] The Requesting Authority has scheduled an Initial Case Management Conference for December 15.
26   2006, at which time the Court may set the trial date for the Action. New World intends to request
     that the trial be set to commence in the fall of 2007.
27   [6] Due to the fact that Dao Heng changed its name to DBS, the prefix for the account number may
     have changed as well.
28

documents in the possession custody or control of DBS relating to any account of Welltime, for the period between October, 2002 and November, 2006, into which monies were deposited from MOT's HSBC account (account number 593-340706-838):

- Application for account opening and account opening documents.
- Signature cards.
- Bank mandate documents.
- Agreements relating to the said accounts.
- Board minutes and written resolutions.
- Bank statements.
- Slips and bank documents for the withdrawal of funds.
- Cheques (including cancelled cheques).
- Orders for and other bank documents relating to telegraphic or wire transfers.
- Instructions, memoranda and correspondence relating to the deposit, withdrawal and transfer of funds.

19. The Witness will be required to produce and give testimony authenticating the said documents. New World requires such evidence in order to establish its claims for fraud against Defendants, and offer evidence regarding: (1) misrepresentations (false representation, concealment, or nondisclosure) concerning the nature of Welltime, and, specifically whether Welltime is connected to, and controlled by, Tony Qu and/or his family; (2) Defendants' knowledge of the falsity of such representations made to New World; (3) Defendants' intent to induce New World's reliance on such representations; (4) the justifiable reliance of New World on such representations; and (5) the damage suffered by New World as a result.

1    **IV.    PROCEDURES TO BE FOLLOWED**

2            20.    Pursuant to the law of the United States of America, New

3    World's request to secure the requested documents from DBS and the testimony

4    from the Witness authenticating those documents, is a proper and necessary

5    measure because it directly relates to the proof of allegations made by New World

6    herein and is necessary for a fair resolution of the pending action.  In the interest of

7    justice, we therefore request that you permit New World to take the oral evidence of

8    the Witness and cause the Witness, by the proper and usual means, to appear before

9    your Court, or some other competent and authorized officer appointed by you for

10   that purpose, at a time and place to be appointed by you, then and there to answer

11   New World's questions under oath and produce the documents requested by New

12   World herein.

13           21.    The Requesting Authority also requests that the oral testimony

14   of the Witness be recorded verbatim and that the transcripts be authenticated in

15   accordance with your procedures.  The Requesting Authority requests that these

16   special methods of procedure be followed.  The testimony of the Witness is to be

17   obtained as testimony for use as evidence at trial.  The documents requested to be

18   produced are intended to be tendered as admissible evidence at trial.

19           22.    The Requesting Authority further requests that the executed

20   letter of request, together with the documents produced and the authenticated

21   transcripts, be returned in a sealed envelope marked "Executed Letter of Request"

22   to the individuals identified in Paragraph 3, above.

23           23.    The Requesting Authority further requests that the notification

24   of the time and place for execution of the letter of request be given to the

25   individuals identified in paragraph 3, above.

26

27

28

24.     The foregoing is based on the allegations and contentions of New World, which the Requesting Authority believes establish that the requested evidence is relevant to the trial of this Action.  In issuing this Letter of Request, the Requesting Authority does not hereby endorse said allegations and contentions as established facts.

Witness, the Honorable Susan Illston, Judge of the United States District Court, Northern District of California, this  30th  day of November, 2006.



[SEAL]

Judge of the United States District Court,
Northern District of California

By

Clerk of the United States District Court,
Northern District of California

Case No.
LEGAL_US_W # 54689360.5

-16-

[PROPOSED] LETTER OF REQUEST
REGARDING WELLTIME INDUSTRIES,
LTD